IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00884-PAB-MEH

PROGRADE AMMO GROUP LLC, d/b/a BVAC, a Delaware limited liability company,

      Plaintiff,

v.

CURT PERRY, an individual,
KRISTEN PERRY, an individual,
AMMO KAN, a Colorado limited liability company,
AMMO CAN LLC, a Colorado limited liability company,
AMMO CAN LLC, a Wyoming limited liability company,
AMMO KAN FRANCHISE GROUP LLC, a Wyoming limited liability company,
HIGH COUNTRY SALES, LLC, a Colorado limited liability company,
HIGH COUNTRY WHOLESALE, LLC, a Wyoming limited liability company,
HIGH COUNTRY SPORT, LLC, a Wyoming limited liability company, and
JOHN DOES 1-5,

      Defendants.

_____

## ORDER
_____

      This matter is before the Court on the Motion to Dismiss Amended

Counterclaims filed by plaintiff ProGrade Ammo Group LLC ("ProGrade") [Docket No.

42]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff, a manufacturer of ammunition and related products, sells products under the marks "Bitterroot Valley Ammunition & Components," "Bitterroot Valley," and "BVAC" (the "BVAC Marks").  Docket No. 1 at 5, ¶¶ 20-21.  Plaintiff and its predecessor have used the BVAC Marks since 2008 in association with the sale of ammunition products.  *Id.* ¶ 23.  Plaintiff brings claims against defendant Curt Perry, his wife Kristen Perry, and a number of Colorado and Wyoming entities, each of which Mr. Perry is either the sole owner and member or a principal and part owner of (the "Ammo Kan Entities").[2]  *Id.* at 2-4, ¶¶ 2-10.  Plaintiff and/or its predecessor have supplied ammunition to Mr. Perry and/or one of the Ammo Kan Entities since at least 2011 for sale at Ammo Kan booths at gun shows and at an "Ammo Kan" retail facility in Littleton, Colorado.  *Id.* at 7, ¶¶ 30, 32.  Between January and June 2013, Mr. Perry, purportedly on behalf of defendant Ammo Kan LLC, ordered ammunition products from plaintiff and promised to pay for them.  *Id.* ¶ 33.  Plaintiff was never paid for the orders, which

---

[1]The following facts are drawn from plaintiff's complaint [Docket No. 1] and/or defendants' Amended Counterclaims [Docket No. 39].  The allegations in the Amended Counterclaims are assumed to be true for purposes of resolving plaintiff's motion to dismiss pursuant to Rule 12(b)(6).  *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  The allegations in plaintiff's complaint are included for background purposes, but are not presumed true for the purpose of resolving this motion.

[2]Plaintiff alleges that Mr. Perry, as owner and/or principal of all of the Ammo Kan Entities, exercises substantial dominion over them, controls their every business decision and operations, co-mingles the entities' funds with those of Mr. and Mrs. Perry, and uses company funds and assets for his personal benefit.  Docket No. 1 at 4, ¶ 16.  Given the number of similarly-named defendants involved and plaintiff's alter ego allegations, for ease of reference the Court will refer to Mr. Perry and each of the Ammo Kan Entities collectively as "defendants."

2

resulted in an outstanding balance of $377,127.63 (the "outstanding balance").  *Id.* at 7-8, ¶¶ 33, 38.

The products that plaintiff sold to Mr. Perry and Ammo Kan Colorado included a quantity of "plinkers," ammunition that has cosmetic imperfections, but which is nonetheless usable, and factory rejects, which did not pass plaintiff's quality control requirements but which Mr. Perry intended to re-manufacture by salvaging usable components.  *Id.* at 7-8, ¶¶ 34-35.  Plaintiff does not authorize the use of the BVAC Marks on plinkers or factory rejects.  *Id.* at 8, ¶ 36.

In the summer of 2013, Mr. Perry told representatives of plaintiff that he lacked the funds to pay the outstanding balance, but that defendants would pay plaintiff after new business ventures were successful.  Docket No. 1 at 8, ¶ 39.  Around the same time, one of plaintiff's representatives visited defendants' Littleton, Colorado facility and observed that defendants had begun manufacturing ammunition.  *Id.*  During that visit, Mr. Perry informed plaintiff's representative that he planned to move his business operations to Wyoming.  *Id.*

Due to defendants' non-payment of the outstanding balance, plaintiff brought a lawsuit against Ammo Kan Colorado and Mr. Perry in the District Court, Douglas County, Colorado (the "state court lawsuit"), which remains pending.  Docket No. 1 at 8-9, ¶ 41.  After the state court lawsuit was filed, plaintiff discovered that Mr. Perry had begun operating an ammunition manufacturing facility in Laramie, Wyoming operating under the name Maverick Ammunition.  *Id.* at 9, ¶ 42.

In early 2014, plaintiff began receiving complaints about ammunition bearing the BVAC Marks that customers had purchased at gun shows from Ammo Kan booths. Docket No. 1 at 10, ¶ 46.  After investigating, plaintiff discovered that, on at least one instance, at a gun show in March 2014, an Ammo Kan booth was selling ammunition using the BVAC Marks that had not been manufactured by plaintiff.  *Id.* ¶¶ 49-50. Plaintiff alleges that defendants are either falsely selling ammunition manufactured by Maverick using the BVAC Marks, or are inappropriately using the BVAC Marks on ammunition that was sold as factory rejects, for which the use of the marks is not authorized.  *Id.* at 11, ¶ 53.  Plaintiff brings claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), violation of Colorado's Deceptive Trade Practices Act, common law trademark infringement, common law unfair competition, unjust enrichment, tortious interference with prospective business advantage, fraudulent conveyance, alter ego, and civil conspiracy.  *See* Docket No. 1.

Defendants assert five counterclaims, for declaratory judgment of non-infringement, breach of contract, "not properly named parties," breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.  *See* Docket No. 39.  In support of their declaratory judgment claim, defendants allege that plaintiff provided defendants with a tablecloth bearing one of the BVAC Marks for use in selling defendants' products at gun shows.  Docket No. 39 at 17, ¶ 152.  Defendants also allege that they received ammunition from plaintiff in boxes marked with BVAC's name, and were never advised that this ammunition could not be

4

sold in those factory boxes.  *Id.* at 18, ¶ 153.  Finally, defendants allege that plaintiff

does not have a valid registration for the BVAC Marks.  *Id.* ¶ 154.

    In support of their remaining counterclaims, defendants allege that they had a

longstanding positive relationship with plaintiff's predecessor company, Bitterroot Valley

Ammunition Company, before plaintiff purchased the company in late 2011 or early

2012.  Docket No. 39 at 16, ¶ 146.  In late 2012 and early 2013, however, defendants

purchased ammunition from plaintiff that was "defective, incompetently manufactured,

badly engineered, and/or sold to [defendants] under the guise of a higher quality

product."  *Id.* ¶ 147.  Due to customer dissatisfaction with plaintiff's allegedly inferior

product, defendants have suffered loss of good will and reputational damage within the

gun and ammunition community.  *Id.* at 17, ¶ 150.  Defendants have offered to return

the faulty and defective ammunition for a full reimbursement, but plaintiff has refused

defendants' offer.  *Id.* ¶ 151.  Finally, defendants allege that Kristen Perry, Curt Perry,

Ammo Can, LLC (Colorado), Ammo Can, LLC (Wyoming), Ammo Kan Franchise

Group, LLC, High Country Sales, LLC, High Country Wholesale, LLC, and High Country

Sport, LLC were never a party to any contract or agreement with plaintiff and were

improperly named as defendants in this action.  *Id.* at 21, ¶ 171.

## II.  ANALYSIS

    Plaintiff moves to dismiss defendants' counterclaims, arguing that (1)

defendants' declaratory judgment counterclaim is redundant to plaintiff's claim under

the Lanham Act, (2) the Court either lacks jurisdiction over or should abstain from

exercising jurisdiction over defendants' breach of contract and breach of warranty

counterclaims because they are substantially similar to counterclaims that defendants

asserted in the pending state court lawsuit, and (3) defendants' counterclaim for "not

properly named parties" is not a cognizable claim for relief.  *See* Docket No. 42.

### A.  Declaratory Judgment Counterclaim

Plaintiff argues that, to the extent defendants contend that they have not

infringed the BVAC Marks in violation of the Lanham Act, their counterclaim will

necessarily be resolved in connection with plaintiff's infringement claim.  *See* Docket

No. 56 at 3.  Defendants argue that their declaratory judgment claim seeks a

declaration both as to direct and indirect infringement, and is therefore not redundant to

plaintiff's claim of false designation of mark.  Docket No. 55 at 9.

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of

actual controversy within its jurisdiction, . . . any court of the United States, upon the

filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be

sought. . . ."  28 U.S.C. § 2201(a).  The Court "is not obliged to entertain every

justiciable declaratory claim brought before it."  *State Farm Fire & Cas. Co. v. Mhoon*,

31 F.3d 979, 982 (10th Cir. 1994).  The Tenth Circuit has identified certain factors a

court should consider when determining whether to exercise jurisdiction over a

declaratory judgment claim:

> [1] whether a declaratory action would settle the controversy; [2] whether it
> would serve a useful purpose in clarifying the legal relations at issue; [3]
> whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4]
> whether use of a declaratory action would increase friction between our

federal and state courts and improperly encroach upon state jurisdiction; and
[5] whether there is an alternative remedy which is better or more effective.

*Id.* at 983.

Multiple courts have dismissed so-called "mirror image" noninfringement counterclaims in intellectual property actions. *See Sarkis' Café, Inc. v. Sarks in the Park, LLC*, --- F. Supp. 2d ----, 2014 WL 3018002 at *2 (N.D. Ill. July 3, 2014) (dismissing trademark non-infringement counterclaim because "once the Court rules on the merits of Count II of the Complaint, the question of whether Defendant infringed upon Plaintiff's marks will be resolved in its entirety."); *see also Interscope Records v. Duty*, 2006 WL 988086 at *3 (D. Az. Apr. 14, 2006) (dismissing declaratory judgment claim in copyright action because "[t]he issue of copyright infringement will be decided by this court regardless of the declaratory judgment claim").  However, "a counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim."  *Ferring B.V. v. Fera Pharm. LLC*, 2014 WL 4829053 at *6 (E.D.N.Y. Aug. 13, 2014) (citations omitted).

The Court finds that defendants' declaratory judgment counterclaim is not a mirror image of plaintiff's claim for relief.  Defendants' counterclaim seeks a declaratory judgment on the issue of both direct and indirect infringement, *see* Docket No. 39 at 19, ¶ 163, while plaintiff's claim for false designation of mark addresses only direct infringement.  *See* Docket No. 1 at 11-12, ¶¶ 56-64.  The Court determines that the first two *State Farm* factors – whether a declaratory judgment action would settle a case or controversy and the declaratory judgment claim's usefulness in clarifying the legal

relations at issue – weigh in favor of allowing defendants' declaratory judgment counterclaim.  Conversely, plaintiff raises no argument that defendants bring their counterclaim in order to "race to *res judicata*," that it would increase friction between the federal and state court systems, or that there is a superior alternative remedy.

### B.  Breach of Contract and Implied Warranty Counterclaims

Plaintiff argues that defendants' second, fourth, and fifth counterclaims – respectively, breach of contract, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose – should be dismissed because defendants have brought similar counterclaims in a state court action that plaintiff filed in Douglas County, Colorado.  In that case, plaintiff brought suit against defendants Curt Perry and Ammo Kan, LLC for non-payment of the outstanding balance.  Docket No. 42 at 2.  In response, defendants Curt Perry and Ammo Kan, LLC brought a number of counterclaims related to the quality of plaintiff's product.  *See* Docket No. 42-1 at 5-6, ¶¶ 60-63.

Plaintiff argues that defendants' breach of contract and implied warranty claims should be dismissed because the Court lacks subject matter jurisdiction over them, and alternatively, because the Court is barred from entertaining the counterclaims by the abstention doctrines outlined in *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  As discussed below, the Court finds that the *Colorado River* abstention doctrine is applicable here. Accordingly, the Court need not discuss *Younger* abstention or plaintiff's arguments regarding subject matter jurisdiction.

8

The *Colorado River* doctrine allows federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" where the federal court would otherwise have concurrent jurisdiction with the state court. *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (citing *Colorado River*, 424 U.S. at 817-18).

In order to defer to a state court under the *Colorado River* doctrine, a federal court must first assess whether the state court suit is in fact "parallel" to the federal suit. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 1081 (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). In the Tenth Circuit, a court assessing whether state and federal proceedings are parallel should consider the actual posture of the state proceedings, instead of considering "how the state proceedings could have been brought in theory." *Id.*

In this case, the Court finds that defendants' breach of contract and implied warranty counterclaims are parallel to the counterclaims that defendants brought in the pending state court action. Defendants argue that the suits are not parallel because, of the nine defendants named in this action, only Mr. Perry and Ammo Kan, LLC are named as defendants in the state court action. Docket No. 55 at 14. Plaintiff replies that, according to defendants' own allegations, only defendant Ammo Kan would have standing to assert defendants' counterclaims because only Ammo Kan was party to any contract with plaintiff. Docket No. 56 at 6.

The Court agrees with plaintiff.  Allegations in a complaint or counterclaim are binding judicial admissions, which can properly be entertained on a motion to dismiss.[3] Defendants allege that Curt Perry, Kristen Perry, and all of the Ammo Kan Entities except for Ammo Kan, LLC have never had a commercial relationship with plaintiff. Docket No. 39 at 21, ¶ 171.  In opposition to plaintiff's motion, defendants now argue that applying the *Colorado River* doctrine would deprive those same defendants of their right to bring breach of contract and implied warranty claims against plaintiff.  Docket No. 55 at 14.  Based on defendants' own admission, the only party with standing to assert the breach of contract and implied warranty claims is Ammo Kan, LLC, which brought similar counterclaims in the state court action.  Moreover, the presence of additional parties in this case does not preclude a finding that the actions are parallel. *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) ("[t]he addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings.") (citation omitted).

Defendants next argue that they did not assert either implied warranty claim in the state court action.  Docket No. 55 at 14.  To be sure, a review of defendants' counterclaims in the state court action shows that defendants did not label their counterclaims at all.  *See* Docket No. 42-1 at 5-6.  Instead, defendants in the state court action seek recovery of unspecified "business losses" incurred due to plaintiff's

---

[3]  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("the allegation in the amended complaint is a binding judicial admission"); *see also Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) (same); *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (same); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 894 (N.D. Ill. 2000) (on a motion to dismiss, parties "can plead themselves out of court by alleging facts that show that they have no claim").

allegedly defective ammunition. *Id.* at 5, ¶ 61.  Cases are parallel for purposes of the *Colorado River* doctrine "where (1) the parties are substantially similar and (2) [the claims] are predicated on the same allegations as to the same material facts." *Romine v. Compuserve Corp.* 160 F.3d 337, 340 (6th Cir. 1998).  "[E]xact parallelism . . . is not required.  It is enough if the two proceedings are 'substantially similar.'" *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (applying *Colorado River* abstention where both the federal and state dispute concerned the same underlying conduct).  Here, the same defendants have brought substantially similar counterclaims against ProGrade in state and federal court seeking damages stemming from the same conduct.  *Compare* Docket No. 42-1 at 5, ¶ 61 (alleging that defendants suffered damages by "selling ammunition provided and manufactured by [ProGrade] which were defective, incompetently manufactured, [and] badly engineered"); *with* Docket No. 39 at 20, ¶ 166 (alleging damages as a result of defendants' resale of ammunition that "was defective, incompetently manufactured, [and] badly engineered"), 22, ¶ 174 (alleging damage because the ammunition sold "was not of fair average quality"); 23, ¶ 178 ("[t]he shipped 'BVAC' ammunition was not suitable and/or fit to properly fire out of firearms").  Although defendants in the state court action declined to identify their counterclaims with specificity, the suits are parallel for purposes of the *Colorado River* doctrine.

Having determined that the proceedings are parallel in part, the Court "must then determine whether deference to state court proceedings is appropriate" by looking at a series of nonexhaustive factors: "(1) whether either court has assumed jurisdiction over

property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Fox*, 16 F.3d at 1082. The first *Colorado River* factor is inapplicable here as there is no real property involved in the parties' dispute. As to the second factor, plaintiff concedes that the federal forum is "no more inconvenient than the state forum," as both are located in the Denver area. Docket No. 42 at 13. The third factor, the potential for piecemeal and inconsistent rulings, weighs heavily in favor of dismissal, as both the federal and state counterclaims concern damages related to the same underlying conduct. Finally, the state court was the first to obtain jurisdiction. *Compare* Docket No. 42-1 at 6 (counterclaim dated October 28, 2013) *with* Docket No. 1 (complaint filed March 26, 2014). Upon consideration of these factors, the Court concludes that the *Colorado River* doctrine applies, and the Court will dismiss defendants' second, fourth, and fifth claims for relief. Since the Court is abstaining from exercising jurisdiction, such dismissal will be without prejudice.

### C. "Not Properly Named Parties" Counterclaim

Defendants' third counterclaim, labeled "not properly named parties," alleges that defendants Kristen Perry, Curt Perry, Ammo Can, LLC (Colorado), Ammo Can, LLC (Wyoming), Ammo Kan Franchise Group, LLC, High Country Sales, LLC, High Country Wholesale, LLC, and High Country Sport, LLC were never party to any contract or agreement with plaintiff. Docket No. 39 at 21, ¶ 171. Plaintiff argues that this counterclaim should be dismissed because it is not a cognizable cause of action and also that, if designated as an affirmative defense, the claim is irrelevant because

plaintiff has not asserted a breach of contract claim against defendants.  Docket No. 42.

The Court agrees with plaintiff.  Although an improperly named defendant may be

grounds for a motion to dismiss, *see, e.g.*, *Jenkins v. Jackson*, 538 F. Supp. 2d 31, 33

(D.D.C. 2008) (dismissing individual defendants from a Title VII employment

discrimination case when plaintiff named them only in their official capacities), plaintiff

has not identified, and the Court is not aware of, any authority that recognizes

improperly naming a defendant as an independent cause of action for which relief may

be granted.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff ProGrade Ammo Group LLC's Motion to Dismiss

Amended Counterclaims [Docket No. 42] is **GRANTED IN PART**.  It is further

**ORDERED** that defendants' second, fourth and fifth counterclaims are dismissed

without prejudice.  It is further

**ORDERED** that defendants' third counterclaim is dismissed with prejudice.

Defendants' first counterclaim remains pending.

DATED March 9, 2015.

BY THE COURT:

s/Philip A. Brimmer _____
PHILIP A. BRIMMER
United States District Judge